# EXHIBIT 1

# EXHIBIT 1

**Plaintiff Ruth Apple's Complaint**

# EXHIBIT 1

# EXHIBIT "A"

EXHIBIT "A"

5406501.1

Electronically Filed
2/15/2019 7:16 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
JAMES D. URRUTIA, ESQ.
Nevada Bar No. 12885
E-Mail: james@mwinjury.com
KATIE E. GOLDBERG, ESQ.
Nevada Bar No. 13493
E-Mail: katie@mwinjury.com
**MAINOR WIRTH, LLP**
6018 S. Ft. Apache Rd., Ste. 150
Las Vegas, Nevada 89148
Phone: (702) 464-5000
Fax: (702) 463-4440
*Attorneys for Plaintiff*

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | | |
|---|---|---|
| RUTH APPLE, | ) | CASE NO: A-19-789526-C |
| | ) | DEPT NO: Department 15 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CSAA GENERAL INSURANCE | ) | |
| COMPANY dba AAA INSURANCE; | ) | |
| CSAA INSURANCE EXCHANGE dba | ) | |
| AAA INSURANCE; and MARIBEL | ) | |
| LEYVA; DOES 1 – 20, inclusive, | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

Plaintiff, RUTH APPLE, by and through her counsel of record, JAMES D. URRUTIA, ESQ. and KATIE E. GOLDBERG, ESQ., of MAINOR WIRTH, LLP, and for her causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

Plaintiff brings this lawsuit against AAA because AAA breached its contract with Plaintiff to pay benefits to her if and when she was in an injury inducing motor vehicle collision. Even though Plaintiff was nearly paralyzed—unable to walk—within 3 days of the

1

underlying motor vehicle collision and underwent emergency surgery one day later—just 4 days after the collision—AAA has denied Plaintiff benefits under her medical payments and underinsured motorist coverages. AAA chose to make such denials without performing a complete investigation of the claims and choosing to rely on incomplete and inaccurate facts. In addition to the emergency back surgery, Plaintiff also eventually underwent a lumbar fusion back surgery. Finally, and inexplicably, AAA, even after the third-party insurance carrier accepted liability and paid its full policy limits, has continued to deny Plaintiff benefits.

## JURISDICTION AND PARTIES

1. At all times relevant, Plaintiff, RUTH APPLE, was and is a resident of Clark County, State of Nevada.

2. At all times relevant, Defendant CSAA GENERAL INSURANCE COMPANY dba AAA INSURANCE was, and is, an entity doing business in the County of Clark, State of Nevada.

3. At all times relevant, Defendant CSAA INSURANCE EXCHANGE dba AAA INSURANCE was, and is, an entity doing business in the County of Clark, State of Nevada.

4. At all times relevant, upon information and belief, Defendant, MARIBEL LEYVA ("LEYVA"), was and is a resident of the County of Clark, State of Nevada.

5. The identity of Defendants DOES 1 through 5 is unknown at this time; however, Plaintiff alleges that DOES 1 through 5 are the owners of the vehicle that struck the vehicle in which Plaintiff was a passenger. Plaintiff requests leave of the Court to amend this Complaint to name the Defendant specifically when the identity becomes known.

6. The identity of Defendants DOE 6 through 10 is unknown at this time; however, Plaintiff alleges that DOE 6 through 10 are other driver(s) who were driving the vehicle(s) that struck the vehicle in which Plaintiff was a passenger. Plaintiff requests leave of the Court to amend this Complaint to name the Defendant specifically when the identity becomes known.

7. The identities of Defendants DOES 11 through 20, are unknown at this time and may be individuals, corporations, associations, partnerships, subsidiaries, holding companies, owners, predecessor or successor entities, joint venturers, parent corporations or other related

2

business entities of Defendants, inclusive, who were acting on behalf of or in concert with, or at the direction of Defendants and may be responsible for the injurious activities of the other Defendants. Plaintiff alleges that each named and Doe Defendant negligently, willfully, intentionally, recklessly, vicariously, or otherwise, caused, directed, allowed or set in motion the injurious events set forth herein. Each named and Doe Defendant is legally responsible for the events and happenings stated in this Complaint, and thus proximately caused injury and damages to Plaintiff. Plaintiff requests leave of the Court to amend this Complaint to name the Doe Defendants specifically when their identities become known.

**FACTS COMMON TO ALL CAUSES OF ACTION**

8. In 2006, Plaintiff and her husband entered into a contractual relationship with Defendant AAA for automobile insurance.

9. In March of 2016, Plaintiff was still in a contractual relationship with AAA for automobile insurance.

10. Over that decade relationship, Plaintiff regularly paid insurance premiums to AAA for automobile coverage.

11. On February 17, 2017, AAA provided Plaintiff automobile insurance according to Policy No. NVSS-104203881 which provided underinsured motorist coverage of $300,000 per person and $25,000 of medical payments per person.

12. According to the policy, the medical payments coverage applied when an insured person suffered "bodily injury caused by an accident...." *See* policy, p. 15.

13. According to the policy, the underinsured motorist coverage applied when an insured person suffered "bodily injury caused by an accident...." *See* policy, p. 19.

14. As defined in the policy the word "accident" meant "a sudden, unexpected, and unintentional occurrence." *See* policy, p. 19.

15. As defined in the policy the phrase "bodily injury" meant "bodily harm, sickness, or disease suffered by a person, including death resulting therefrom." *See* policy, p. 5.

16. On February 17, 2017, Defendant Leyva rear-ended Plaintiff.

3

17. Immediately upon impact, Plaintiff felt pain, a burning sensation across her lower back, and radiating sensation all the way down her right leg to her toes.

18. Over the next 3 days the pain and numbness worsened.

19. On February 21, 2017, Plaintiff had severe numbness in both of her legs.

20. On February 21, 2017, Plaintiff felt as if she could not walk or stand.

21. On February 21, 2017, Plaintiff was rushed to Summerlin Hospital Medical Center.

22. While at the hospital, Plaintiff underwent various diagnostic testing, including MRIs of her lower back.

23. The MRI of Plaintiff's lower back show a disk herniation of L5-S1 with severe right S1 nerve root impingement.

24. The MRI also showed a disk protrusion at the L4-L5 level.

25. On February 24, 2017, Dr. Khavkin reviewed Plaintiff's MRI and recommended surgical treatment consisting of a microdisectomy at the L5-S1 level on the right side.

26. On February 24, Dr. Takagi performed the microdisectomy surgery.

27. Dr. Takagi, in his operative record, noted that the "disk herniation was in several pieces and removed."

28. Plaintiff began recuperating from surgery.

29. By March 13, 2017, Plaintiff had informed AAA of the car collision and of her surgery.

30. In response AAA requested various documents to be filled out by Plaintiff, including an authorization to obtain medical records.

31. Approximately 10 days later, AAA requested Plaintiff to provide a "recorded statement". In this letter, AAA threatened Plaintiff that if Plaintiff did not respond to the request within 30 days that AAA would deny Plaintiff's claim for "non-cooperation." See Letter dated March 23, 2017.

32. On March 24, 2017, Plaintiff's husband called AAA to inform it that Plaintiff was still recuperating from surgery but that Plaintiff would be calling AAA to provide the recorded statement.

4

33. Three days later, on March 27, 2017, AAA again threatened Plaintiff, stating: "Failure to respond could result in denial of the claim. Please be aware this may result in litigation against you." See Letter dated March 27, 2017.

34. On April 17, 2017, Plaintiff called AAA and left a message at approximately 12:18 p.m.

35. At approximately 2:30 p.m. a representative of AAA, upon information and belief, adjuster Sharie Mouton, called and spoke with Plaintiff.

36. During that phone call Plaintiff provided AAA with all information AAA requested regarding the collision and her injuries.

37. AAA however did not take a recorded statement at that time.

38. AAA's representative told Plaintiff that Plaintiff would find out whether or not AAA had approved the claim later that week.

39. Two weeks later, on May 1, 2017, Plaintiff had still not received notification as to the status of her claim, when AAA adjuster, Jennifer Wilson, requested Plaintiff to provide a list of medical providers Plaintiff had seen over the last 3-5 years.

40. By May 25, 2017, Plaintiff had provided AAA with all documents and information AAA had requested to date, including a medical authorization, an itemization of medical bills, and a list of medical providers.

41. On June 2, 2017, Plaintiff received notice that AAA had set an appointment for her to meet with a Dr. Jason Garber.

42. On June 6, 2017, AAA informed Plaintiff by letter that AAA had "sent out the Medical Authorizations needed in order to process the reimbursement as needed."

43. As of this letter, AAA had not provided confirmation of approval of her claim, however, Plaintiff believed, based on the letter, that AAA had approved the claim and that she would be receiving reimbursement of her out of pocket medical bills.

44. The very next day, on June 7, 2017, AAA sent Plaintiff a letter indicating that reimbursement was not guaranteed; stating: "we will then be able to determine if payment/reimbursement will be made."

5

45. AAA then cancelled Plaintiff's appointment with Dr. Garber.

46. Shortly thereafter AAA scheduled an appointment for Plaintiff with a different doctor, a Dr. Sherman.

47. AAA paid Dr. Sherman to review Plaintiff's medical records to determine the February 17, 2017, collision did not cause Plaintiff's injuries or her need for surgery.

48. On October 5, 2017, Dr. Sherman issued a report in which he stated: "there is no prior mention of the herniated disc at the L5-S1 level prior to the 2/17/2017 incident; however, there are comments regarding multilevel degenerative changes of the lumbar spine."

49. As a result, Dr. Sherman opined that Plaintiff's injuries and surgery were not related to the February 17, 2017, collision.

50. Based on Dr. Sherman's report, AAA on October 9, 2017, informed Plaintiff that it was denying her claim.

51. At the time AAA first denied Plaintiff's claim, neither AAA nor Dr. Sherman had in its possession nor reviewed:

 a. The applicable traffic accident report;

 b. Photographs of the vehicles;

 c. Any imaging from Plaintiff's MRIs;

 d. Any imaging from Plaintiff CT scans;

 e. Any statements made by Defendant Leyva;

 f. A recorded statement from Plaintiff;

 g. A recorded statement from Plaintiff's husband;

 h. An examination under oath from Plaintiff;

 i. An examination under oath from Plaintiff's husband;

 j. An inspection of the vehicle Plaintiff was driving at the time of the collision;

 k. An inspection of the vehicle Defendant Leyva was driving at the time of the collision;

 l. Any information from the third-party liability carrier, Mendota Insurance;

 m. A causation report or letter from Dr. Takagi; nor

n. A report from a doctor specializing in Neuroradiology.

52. After Plaintiff received notice of the denial, Plaintiff was able to identify various errors with Dr. Sherman's report, including evidence that Dr. Sherman was a biased doctor against people making claims for personal injuries.

53. Plaintiff provided this information to AAA.

54. In response, AAA sent the claim to its attorneys.

55. AAA's attorneys began its own investigation focusing on collecting information and documents AAA had yet sought to acquire.

56. This process spanned between May 31, 2018, and December 12, 2018.

57. During this time period, AAA's attorneys acquired:

   a. MRI films;
   b. Additional medical records;
   c. A causation report from Dr. Takagi;
   d. The police report;
   e. An inspection of the vehicle Plaintiff was driving; and
   f. Another report from a doctor it paid to review the MRI images.

58. During this period, AAA's attorneys made various false and inaccurate factual statements in writing.

59. During this period, AAA's attorneys disregarded evidence in favor of Plaintiff's claim.

60. During this period, AAA's attorneys did not seek:

   a. Any statements made by Defendant Leyva;
   b. A recorded statement from Plaintiff;
   c. A recorded statement from Plaintiff's husband;
   d. An examination under oath from Plaintiff;
   e. An examination under oath from Plaintiff's husband;
   f. An inspection of the vehicle Defendant Leyva was driving at the time of the collision.

7

61. On April 3, 2018, Plaintiff demanded the third-party liability carrier to pay the limits of its policy as a result of the February 17, 2017, collision.

62. On April 16, 2018, Mendota Insurance informed Plaintiff that it was paying the limits of its liability policy as a result of the subject collision.

63. On December 12, 2018, AAA again denied Plaintiff's claim.

64. As a direct and proximate result of AAA's actions, AAA breached its contract with Plaintiff, breached the implied duty of good faith and fair dealing, and ultimately has caused Plaintiff substantial harm and damage.

65. As a direct and proximate result of Defendant Leyva's negligence, Plaintiff has incurred approximately $613,033 of past medical bills. Defendant Leyva was only insured for $15,000 leaving approximately $598,033 of past medical bills applicable to AAA's insurance policy with Plaintiff.

66. As a direct and proximate result of AAA's breach of contract, Plaintiff has suffered compensatory damages of at least $300,000 and consequential damages of a currently undetermined amount.

67. AAA's actions in evaluating Plaintiff's claim show a pattern and policy of delaying and denying benefits to an unrepresented insured. As such AAA's action justify an award of punitive damages.

68. As a direct and proximate result of AAA's actions, Plaintiff was forced to institute litigation and engage the services of an attorney, and is therefore, entitled to reasonable attorney's fees and costs of suit.

8

## FIRST CLAIM FOR RELIEF

(Breach of Contract – Defendants AAA)

69. Plaintiff repeats and re-alleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

70. That Plaintiff and Defendant were bound by a contractual relationship pursuant to the Policy.

71. That the actions of Defendant, as described herein, constituted a breach of contract between itself and Plaintiff, and as a direct result thereof, Plaintiff has been damaged in a sum in excess of $15,000.

72. That Defendant's refusal to pay Plaintiff's benefits due under the Policy was malicious, willful and intentional, and in fact, did cause injury to Plaintiff in excess of $15,000.

73. These actions justify an award of punitive damages.

74. As a direct and proximate result of the Defendants' breach of the contract, Plaintiff sustained serious injuries and suffered great pain of body and mind, some of which conditions are permanent and disabling, all to Plaintiff's general damage in an amount in excess of Fifteen Thousand Dollars ($15,000).

75. As a further direct and proximate result of the Defendants' breach of the contract, Plaintiff incurred expenses for medical care and treatment in an amount to be determined at trial.

76. As a further direct and proximate result of the Defendants' breach of the contract, Plaintiff had to retain counsel to prosecute this action and is entitled to attorney's fees and costs.

## SECOND CLAIM FOR RELIEF

(Breach of the Covenant of Good Faith and Fair Dealing – Defendants AAA)

77. Plaintiff repeats and re-alleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

78. Through the allegations set forth above, in addition to facts that will be presented at trial, AAA breached its obligation of good faith and fair dealing in relation to Plaintiff and the evaluation of Plaintiff's claim.

### Bad Faith

79. AAA had no reasonable basis for the way in which it conducted its evaluation and handling of Plaintiff's claim.

80. AAA knew, or recklessly disregarded, the fact that there was no reasonable basis for its conduct.

81. AAA's unreasonable conduct resulted in AAA breaching its contract with Plaintiff and causing Plaintiff additional harm and damage.

### Punitive Damages

82. Plaintiff suffered a loss covered under an insurance policy with AAA.

83. AAA, however, had a systemic policy to deny persons similarly situated like Plaintiff benefits even though the loss was covered under an insurance policy.

84. AAA, as soon as, it was informed of Plaintiff's claim undertook unreasonable actions, including threatening Plaintiff with litigation and denial of her claim.

85. AAA's systematic process included sending Plaintiff, and others similarly situated, to hired doctors without providing the doctors all medical records and information needed to properly evaluate a claim.

86. AAA failed to conduct a full, fair, prompt, and thorough investigation of all of the bases of Plaintiff's claim.

87. As a result of AAA's unreasonable and intentional conduct, Plaintiff was harmed and suffered damage.

88. As a direct and proximate result of the Defendants' bad faith, Plaintiff sustained

10

serious injuries and suffered great pain of body and mind, some of which conditions are permanent and disabling, all to Plaintiff's general damage in an amount in excess of Fifteen Thousand Dollars ($15,000).

89. As a further direct and proximate result of the Defendants' bad faith, Plaintiff incurred expenses for medical care and treatment in an amount to be determined at trial.

90. As a further direct and proximate result of the Defendants' bad faith, Plaintiff had to retain counsel to prosecute this action and is entitled to attorney's fees and costs.

## THIRD CLAIM FOR RELIEF

(Violation of Nevada's Unfair Insurance Claims Practices Act – Defendants AAA)

91. Plaintiff repeats and re-alleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

92. AAA's action in the handling of Plaintiff's claim violated the following sections of the Nevada Unfair Insurance Claims Practices Act:

a. Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

c. Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

d. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

e. Failing to effectuate prompt, fair, and equitable settlements of claims in which liability of the insurer has become reasonably clear.

f. Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts

ultimately recovered.

k.     Delaying the investigation or payment of claims by requiring an insured or a claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

l.     Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

m.     Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

n.     Advising an insured or claimant not to seek legal counsel.

93. As a direct and proximate result of the Defendants' violations, Plaintiff sustained serious injuries and suffered great pain of body and mind, some of which conditions are permanent and disabling, all to Plaintiff's general damage in an amount in excess of Fifteen Thousand Dollars ($15,000).

94. As a further direct and proximate result of the Defendants' violations, Plaintiff incurred expenses for medical care and treatment in an amount to be determined at trial.

95. As a further direct and proximate result of the Defendants' violations, Plaintiff had to retain counsel to prosecute this action and is entitled to attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF

(Negligence – Defendant Leyva)

96. Plaintiff repeats and re-alleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

97. Defendant Leyva, while operating a motor vehicle, failed to pay attention to the road in front of her.

98. As a result, Defendant Leyva was unable to stop her vehicle prior to her vehicle hitting the back of Plaintiff's vehicle.

99. As a direct and proximate result of the Defendant's negligence, Plaintiff sustained serious injuries and suffered great pain of body and mind, some of which conditions are permanent and disabling, all to Plaintiff's general damage in an amount in excess of Fifteen Thousand Dollars ($15,000).

100. As a further direct and proximate result of the Defendant's negligence, Plaintiff incurred expenses for medical care and treatment in an amount to be determined at trial.

101. As a further direct and proximate result of the Defendant's negligence, Plaintiff had to retain counsel to prosecute this action and is entitled to attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, expressly reserving the right to amend this Complaint prior to or at the time of trial of this action to insert those items of damage not yet fully ascertainable, prays judgment against the Defendants, and each of them, as follows:

1. General damages sustained by Plaintiff in an amount in excess of $15,000;
2. Special damages to be determined at the time of trial;
3. Medical and incidental expenses already incurred and to be incurred;
4. Compensatory damages;
5. Consequential damages;
6. Punitive damages;
7. Interest at the statutory rate;
8. Reasonable attorney's fees and costs of suit; and,

13

9. For such other relief as the Court deems just and proper.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, by and through her attorneys, MAINOR WIRTH, LLP, and hereby demands a trial by jury of all issues in the above-entitled matter.

DATED THIS 16th day of February, 2018.

**MAINOR WIRTH, LLP**

/s/ *James D. Urrutia*
JAMES D. URRUTIA, ESQ.
Nevada Bar No. 12885
KATIE E. GOLDBERG, ESQ.
Nevada Bar No. 13493
6018 S. Ft. Apache Rd., Ste. 150
Las Vegas, Nevada 89148
*Attorneys for Plaintiff*